Slip. Op. 01-98____

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: RICHARD W. GOLDBERG, SENIOR JUDGE**

_____
                                  X
THOM S. ZANI D/B/A                X
WHOLESALE ART & FRAME LTD.,       X
                                  X
          Plaintiff,              X     Court No.  95-07-00907
                                  X
          v.                      X
                                  X
UNITED STATES,                    X
                                  X
          Defendant.              X
                                  X
_____  X

[Judgment for Plaintiff]

Peter S. Herrick and Neil B. Mooney, for plaintiff.

Stuart E. Schiffer, Acting Assistant Attorney General; Joseph I. Leibman, Attorney in Charge, International Trade Field Office (Amy M. Rubin), Commercial Litigation Branch, Civil Division, United States Department of Justice.

Dated: August 9, 2001

**O P I N I O N**

**GOLDBERG, Senior Judge**: This matter is before the Court following trial de novo.  It involves the proper classification of certain paintings from Hong Kong and South Korea.  Upon review of the evidence presented at trial, the Court finds in favor of the plaintiff, Thom S. Zani.  The Court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994).

## BACKGROUND

The merchandise at issue was classified by the United States Customs Service ("Customs") under the provision for "[o]ther made up articles:...Other" in subheading 6307.90.99 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Plaintiff, an importer and distributor of paintings and frames, claims that the merchandise is properly free of duty under the provision in subheading 9701.10.00 HTSUS, for "[p]aintings, drawings, and pastels, executed entirely by hand." On the merits, the issue is whether the imports were "executed entirely by hand," as claimed by the plaintiff.

On September 15, 1997, Senior Judge James L. Watson granted summary judgment to defendant, sustaining Customs's classification. Zani v. United States, 976 F. Supp. 1033 (CIT 1997). On appeal, the Federal Circuit vacated the grant of summary judgment and remanded for a trial to resolve disputed issues of fact, including the reliability of Customs's laboratory test. See Thom S. Zani d/b/a Wholesale Art & Frame Ltd. v. United States, Appeal No. 97-1115, 1998 WL 729247 (Fed. Cir. October 16, 1998). Specifically, the Federal Circuit remanded the case, "[b]ecause there are genuine issues of fact to be resolved, including the adequacy of the Custom Service's sampling of the paintings imported by Mr. Zani, the reliability of the

Customs Service's laboratory report regarding the sampled paintings, and the exact nature of the methods used in producing the paintings at issue, and because there is an open question as to the meaning of the term 'stencil' in relation to subheading 9701.10.00 of the HTSUS."  Id.

A bench trial was held on January 11, 2001, in Fort Lauderdale, Florida.

**STANDARD OF REVIEW**

Customs's tariff classification decisions are presumed to be correct, and the importer has the burden of proving otherwise. See 28 U.S.C. § 2639(a)(1)(1994).  To determine whether the importer has overcome this presumption, the Court must consider whether Customs's classification is correct. This evaluation is conducted both independently and in comparison with the importer's proposed alternative.  See Jarvis Clark Co. v. United States, 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878 (1984) reh'g denied, 2 Fed. Cir. (T) 97, 739 F.2d 628 (1984).

**DISCUSSION**

**I.    ARGUMENTS AT TRIAL**

At trial, Customs argued that the imports are properly classifiable under subheading 6307.90.00, HTSUS, rather than subheading 9701.10.00, HTSUS, because they are not "executed entirely by hand." Customs claimed that its classification

decision is supported by laboratory testing and a report by the Customs laboratory in Savannah, Georgia dated January 19, 1994, concluding that the three paintings sampled from the merchandise at issue were produced with the use of a stencil.  Customs asserted that the use of a stencil precludes classifying the merchandise at issue as "executed entirely by hand."

The plaintiff contended that Customs's testing and laboratory report were unreliable because the samples were not representative of the subject merchandise and the test utilized fails under the admissibility factors for the use of "scientific, technical, or other specialized knowledge." Daubert v. Merrel Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993).[1]  The plaintiff also argues that the "stencils" referred to in the Explanatory Notes to the HTSUS are the type that are used in a mechanized system of manufacturing machine-produced painted or silk-screened articles.  Therefore, because plaintiff's artists only occasionally use a single hand-held stencil when painting, the

---

[1]Daubert established that when considering the admissibility of scientific, technical or specialized knowledge, evidence or expert testimony a court should consider: 1) the testability of the hypothesis; 2) whether the theory or technique has been subject to peer review or publication; 3) the known or potential error rate; and 4) whether the technique is generally accepted. See Daubert, 509 U.S. at 589.  In Libas Ltd. v. United States, 193 F.3d 1362 (Fed Cir. 1999), the Federal Circuit explicitly expanded the Daubert test to questions of reliability.

plaintiff argues that the artwork is "executed entirely by hand" under subheading 9701.10.00.

## II.  CUSTOMS'S LABORATORY TEST AND REPORT

Customs based its classification on a test it conducted on three paintings sampled from the merchandise at issue.  See Gov't Ex. A., Notice of Damage, Shortage, or Samples Retained ("Sample Notice"); Gov't Ex. B., United States Custom Service Laboratory Report ("Lab Report").  After a visual inspection with the aid of a magnifying glass, a trained chemist of the Customs Service Laboratory in Savannah, Georgia, Ms. Laurie Lungwitz, concluded that "the paintings showed evidence that a mechanical device (a stencil) was used in the production of the paintings," and thus "the paintings were not executed entirely by hand."  See Lab Report.  Ms. Lungwitz testified that the paintings showed no evidence of brush strokes and the paint appeared, in part, to be applied by spray application.   See id.  Three separate Customs employees verified the test results.  See id.

The trial testimony and evidence, however, exposed significant shortcomings in both Customs's general testing procedure and this specific test.  First, the plaintiff established that the entry numbers on the Lab Report and the entry number on the Sample Notice, did not match.  Through further testimony, Customs was able to explain the discrepancy as

a likely typographical error.  The entry number discrepancy, however, regardless of the cause, damages the integrity of the laboratory test.

Second, the testimony revealed that Customs destroyed the sampled paintings.  During the trial, Ms. Lungwitz explained that under normal Customs procedure an import specialist would notify the Customs laboratory to retain samples once a protest is filed.  In this case, however, for some reason the import specialist failed to make that notification, and the sampled paintings were destroyed.

Third, on cross-examination Ms. Lungwitz testified that Customs's laboratory test did not meet any of the <u>Daubert</u> factors.  <u>See</u> 509 U.S. at 589.

## III.  TESTIMONY OF WANDA BARNEY

Ms. Barney, a professional artist, was qualified by the Court as an expert to testify on the issue of whether the paintings were painted by hand.[2]  Ms. Barney testified that in

---

[2]Customs challenged the Court's expert witness designation of Ms. Barney.  The Court, however, considered Ms. Barney to be qualified as an expert for the purposes of determining if art objects were created by hand.  <u>See</u> F.R.E. 702.  Ms. Barney testified that in over thirteen years as a professional artist she created thousands of art objects using oils, acrylics, watercolors, mixed media, media collages, silk screening, paper casting, sculpturing, and bas relief.  The Court determined that Ms. Barney's knowledge, skill, experience and training would assist the Court in understanding the evidence.  <u>See</u> <u>id.</u>

late 1993 or early 1994, while visiting Zani's place of business, she examined the paintings that are now at issue in this case. Ms. Barney determined that the paintings were painted by hand and not printed. Further, during her testimony, Ms. Barney examined a painting similar to the paintings at issue and determined, by considering its texture and layering, that it was executed entirely by hand.

The Court found Ms. Barney's testimony to be credible. Moreover, the Court notes that Customs was not successful in discrediting either Ms. Barney's qualifications or testimony.

**IV.     ANALYSIS**

The Court finds that Customs improperly classified the merchandise at issue. Based upon the evidence presented at trial, the paintings should have been considered to be executed entirely by hand and thus classified under subheading 9701.10.00, HTSUS. Specifically, the Court finds that the plaintiff has overcome the presumption of correctness enjoyed by Customs, and that Customs's laboratory test has proven to be unreliable in this instance.[3]

---

[3]The Court is mindful of the Federal Circuit's concerns regarding the adequacy of Customs's sampling and the meaning of the term "stencil" within the HTSUS. See Zani, 976, F. Supp. at 1033. The Court declines to address these issues, however, as the adequacy of Customs's laboratory test is the only inquiry necessary for resolution of this case.

As a threshold matter, the Court finds that the plaintiff has overcome the presumption of correctness enjoyed by Customs. See Jarvis, 733 F.2d at 878. Ms. Barney testified that in her professional opinion the paintings were executed entirely by hand. As indicated supra, the Court considered Ms. Barney's testimony to be credible, notwithstanding challenges made by Customs. During the trial, Customs argued that the plaintiff had not presented enough evidence to overcome the presumption of correctness. The Court agrees with Customs that stronger evidence would be preferable. Specifically, the Court would prefer that Ms. Barney examine the same samples examined by Customs's laboratory. Customs, however, destroyed such samples. The Court will not allow Customs to benefit from its own mismanagement of the tested samples.

Next, the Court finds that Customs's laboratory test was unreliable in this instance. The test, as used here, was unreliable both because the destroyed samples could not be examined in conjunction with the laboratory report, and because the entry number discrepancy calls into question both the chain of custody and the general accuracy of Customs's work.

The Court also questions whether the Customs's laboratory test satisfies a Daubert analysis. Ms. Lungwitz testified that the test did not meet any of the Daubert factors. Ms. Lungwitz's

testimony is the only trial evidence on the matter.  The Court recognizes that the <u>Daubert</u> test is not a bright-line test, and that the factors should be considered within the context of the test.[4]  The Court falls short of declaring that Customs's laboratory test fails the <u>Daubert</u> analysis for reliability in all instances.  The Court, however, does find in this instance that Customs has presented no evidence of <u>Daubert</u> reliability.  Thus, for purposes of this case, Customs's test is deemed unreliable.

## CONCLUSION

Because the evidence at trial established that Custom's laboratory test was unreliable in this instance, the Court finds that Customs erred in classifying the merchandise under subheading 6307.90.99, HTSUS.  Further the Court finds that the merchandise is properly classifiable under subheading 9701.10.00, HTSUS.

---

[4]For instance, the court considers that peer review is likely impractical in this context, because few individuals or organizations would find it necessary to examine a painting to determine if it was executed entirely by hand.

**JUDGMENT**

This case having been heard at trial and submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, and DECREED: that the classification of the merchandise at issue in this case, certain paintings from Hong Kong and Korea, by the United States Customs Service ("Customs") under subheading 6307.90.99 of the Harmonized Tarrif Schedule of the United States ("HTSUS") is reversed; and it is further

ORDERED, ADJUDGED, and DECREED: that Customs shall reliquidate the aforementioned subject merchandise under subheading 9701.10.00 of the HTSUS. Customs shall refund all excess duties paid with interest as provided by law. Judgment is hereby entered for plaintiff.

 

_____
Richard W. Goldberg
SENIOR JUDGE

Dated: August 9, 2001
New York, New York