**RUSS BERRIE & COMPANY, INC., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 04–1084.

United States Court of Appeals, Federal Circuit.

Aug. 27, 2004.

Joel K. Simon, Serko & Simon LLP, of New York, NY, argued for plaintiff-appellee. With him on the brief was Despina Keegan.

Mikki Graves Walser, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, NY, argued for defendant-appellant. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, of Washington, DC; and Barbara S. Williams, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brotman, Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The issue in this customs case is whether jewelry reflecting Christmas and Halloween themes is properly classified as "imitation jewelry" under heading 7117 of the Harmonized Tariff Schedules of the United States ("Schedules"), as the U.S. Customs and Border Protection ("Customs") classified the imports, or as "[f]estive ... articles" under heading 9505, as the Court of International Trade held they should have been classified. We hold that the proper classification, as Customs ruled, is under heading 7117 and therefore reverse the judgment of the Court of International Trade and remand the case with instructions to uphold Customs' classification.

## I

The imported articles are inexpensive lapel pins and "earring sets [both] contain[ing] Christmas themes" and an "earring set contain[ing] Halloween themes." *Russ Berrie & Co. v. United States*, 281 F.Supp.2d 1351, 1352 (Ct. Int'l Trade 2003) ("*Russ Berrie* "). The articles include the following motifs: a Santa Claus; a snowman decorated with holly, wearing a top hat and holding a snowball; a teddy bear dressed in red and white Santa outfit and holding a present; red, green, gold bells with/or without red or green bows; a ghost; a jack-o-lantern; a (Frankenstein) monster; and a witch. Berrie Aff. ¶¶ 12–15. "The items were advertised in seasonal Russ Berrie catalogues, and [they] were distributed to be displayed and sold for the appropriate holiday season." *Russ Berrie*, 281 F.Supp.2d at 1352.

At the time it imported these articles, the appellee Russ Berrie & Company ("Russ Berrie") obtained from Customs two Headquarters Ruling Letters stating the classification these and other Russ Berrie products would receive. Customs informed Russ Berrie that the articles involved in this case would be classified as "imitation jewelry" under heading 7117 and not, as Russ Berrie proposed, as "festive articles" under heading 9505. Customs so classified the articles upon importation. As a result, they were dutiable at eleven percent *ad valorem.* Had they been classified as "festive articles," they would have been admitted duty free.

The Court of International Trade rejected Customs' classification and held that the articles should have been classified as "festive articles" under heading 9505. The court first held that Customs' classification rulings were not entitled to any judicial deference because it was "debatable whether Customs gave sufficiently thorough consideration to" its two letter rulings. *Id.* at 1353. "In addition, Customs' classification rulings lack[ed] thoroughness and valid reasoning." *Id.*

On the merits, the court held that the items were prima facie classifiable under both headings. *Id.* at 1355. It ruled, however, that under two notes to the relevant chapters, chapter 95 and not chapter 71 covered these articles. *Id.* at 1355–56.

## II

A. Chapter 71 of the Schedules covers generally pearls, precious and semiprecious stones and precious metals, and it covers "Imitation Jewelry." Heading 7117 covers "[i]mitation jewelry [o]f base metal, whether or not plated with precious metal." Notes 9 and 11 to chapter 71 explain that imitation jewelry means "small objects of personal adornment ... (for example, rings, ... brooches, earrings, ... [and] tie pins ...)" "not incorporating natural or cultured pearls, precious or semiprecious stones (natural, synthetic or reconstructed) nor (except as plating or as

minor constituents) precious metal or metal clad with precious metal."

Both parties and the Court of International Trade agree that the imported merchandise is prima facie classifiable under heading 7117 as "imitation jewelry." We concur. The earrings and pins at issue are "small objects of personal adornment" that are explicitly listed as examples of this category in the notes, and they contain no precious stones or precious metal.

■ Heading 9505 applies to "[f]estive, carnival, or other entertainment articles," which include "[a]rticles for Christmas festivities and parts and accessories thereof," "Christmas ornaments," and "[n]ativity scenes and figures thereof." The Court of International Trade held and Russ Berrie argues, but the government disputes, that heading 9505 also covers the imported merchandise as "festive articles."

"In *Midwest of Cannon Falls, Inc. v. United States*, 122 F.3d 1423, 1429 (Fed. Cir.1997) (*"Midwest"*) the court held that classification as a 'festive article' under Chapter 95 requires that the article satisfy two criteria: (1) it must be closely associated with a festive occasion and (2) the article is used or displayed principally during that festive occasion." *Park B. Smith, Ltd. v. United States*, 347 F.3d 922, 927 (Fed.Cir.2003) (*"Park"*). The government contends that the imported jewelry "depicting such characters as a snowman . . ., ghost, monster, and witch," Appellant's Br. at 15, do not satisfy this test because they do not have "a direct association with and limited use to a particular holiday occasion," *Park*, 347 F.3d at 929.

This court, however, has not given the term "festive articles" as restricted a meaning as the government would ascribe to it. In *Park*, the Court of International Trade ruled that textile products "bearing 'festive symbols,' such as Christmas trees, Santas, holly, ghosts and bats, Easter eggs

and bunnies," were prima facie classifiable as "festive articles" under heading 9505. *Id.* at 927. This court "conclude[d] that . . . [t]he [Court of International Trade] correctly ruled that articles with symbolic content associated with a particular recognized holiday, as Christmas trees, . . . jack-o-lanterns, or bunnies . . ., are festive articles." *Id.* at 929.

The imported articles in this case fit comfortably within that standard. Snowmen decorated with holly, ghosts, and witches' and monsters' heads are symbols that are closely associated with the Christmas and Halloween holidays and are used principally on those occasions. Moreover, these items are listed in Russ Berrie's Christmas and Halloween catalogues and distributed and sold in connection with those holidays. The imported pins and earrings are prima facie classifiable under heading 9505.

■ Although ruling that the imported items were prima facie classifiable under both headings, the Court of International Trade held that a note to chapter 71 made that chapter inapplicable here. Note 3 to that chapter lists fourteen items that "this Chapter does not cover." Note 3(n) excludes from that chapter "Articles covered by Note 2 to Chapter 95."

Note 1 to chapter 95 lists twenty items that "[t]his chapter does not cover." Note 2 then states:

> This chapter includes articles in which natural or cultured pearls, precious or semiprecious stones (natural, synthetic or reconstructed), precious metal or metal clad with precious metal constitute only minor constituents.

Although these two notes may not be models of clarity, their meaning and intent are clear. Note 2 to chapter 95 establishes that the mere presence of minor

amounts of precious stones or metals will not exclude articles from that chapter. The reference in note 3 to chapter 71 to articles "covered by Note 2" to chapter 95, therefore, is to articles containing only minor amounts of precious stones or metals. Since Russ Berrie's imported articles contain no precious stones or metals, they are not "[a]rticles covered by note 2" and note 3 therefore does not exclude them from chapter 71.

In rejecting this argument, the Court of International Trade merely stated that "it is clear that articles of jewelry having no precious stones are not necessarily classifiable in Chapter 71." 281 F.Supp.2d at 1356. The question, however, is whether note 2 to chapter 95 covers jewelry that has no precious stones or metals. For the reasons given above, we hold that it does not, and that the note 3(n) exclusion from chapter 71 is inapplicable here.

Russ Berrie argues that our interpretation of note 2 produces the anomalous result that items containing only a small amount of precious stones or metals would be nondutiable but that items containing none of those materials would be subject to an eleven percent duty. It urges us to construe note 2 to cover jewelry that contains either no or only a small amount of precious stones or metals. Our function, however, is to apply the Customs classification standards as Congress has written them, not to change their meaning to correct seeming injustice. "Chapter Notes are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202." *Park,* 347 F.3d at 926 (citing *Libas, Ltd. v. United States,* 193 F.3d 1361, 1364 (Fed.Cir.1999)).

B. Where, as here, the imported objects are prima facie classifiable under more than one heading, the Schedules' General Rules of Interpretation determine the outcome. These "are the single set of

legal principles that always govern the classification of merchandise under" the Schedules. U.S. Customs & Border Prot., *What Every Member of the Trade Community Should Know About: Tariff Classification* 13 (2004).

Rule 3 states in pertinent part that "when ... goods are, prima facie, classifiable under two or more headings,"

the heading which provides the most specific description shall be preferred to headings providing a more general description.

The explanatory note to this Rule further states that "[a] description by name is more specific than a description by class," and that "[i]f the goods answer to a description which more clearly identifies them, the description is more specific than one where identification is less complete."

■ "Under this so-called rule of relative specificity, we look to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1441 (Fed.Cir.1998). Although Rule 3 states only that the "preferred" heading is the one that "provides the most specific description," we normally apply that heading unless there are compelling reasons not to do so, and we discern no such reasons here.

*Len–Ron Manufacturing Co. v. United States,* 334 F.3d 1304 (Fed.Cir.2003) ("*Len–Ron*"), involved a similar situation. There, the merchandise at issue was "small bags ... for use in cosmetic sales promotions." *Id.* at 1306. We held the items to be prima facie classifiable under subheading 4202.12 as "vanity cases" and under subheading 4202.32 as "[a]rticles of a kind normally carried in the pocket or in the handbag." *Id.* at 1312–13. Applying Rule 3, we concluded that the "vanity

cases" subheading was more specific because it required "more specific characteristic[s] of organizing, storing, or carrying cosmetics," *id.* at 1313–14, while the other subheading encompassed a variety of items, such as "spectacle cases, note-cases (bill-folds), wallets, purses, key-cases, cigarette-cases, cigar-cases, pipe-cases and tobacco-pouches," *id.* at 1312–13 (internal quotation marks omitted).

Under this reasoning, the "imitation jewelry" heading is more specific than the "festive articles" heading because it covers a narrower set of items. "[I]mitation jewelry" is limited to small items of personal adornment that do not contain an appreciable amount of precious or semiprecious stones or metal. Indeed, the chapter notes to chapter 71 list, as examples of "small items of personal adornment," "brooches, earrings, . . . [and] tie pins"— which include the very items of Russ Berrie's imports that are the subject of this litigation.

"Festive articles," however, need only to be closely associated with and used or displayed during a festive occasion. We have recognized that festive articles include such disparate items as "placemats, table napkins, table runners, and woven rugs" depicting "Christmas trees, Halloween jack-o-lanterns, [and Easter] bunnies", *Park,* 347 F.3d at 926, 929; "cast iron stocking hangers[;] . . . Christmas water globe[s]; . . . [and] Easter water globe[s]," *Midwest,* 122 F.3d at 1425, 1428; and jack-o-lantern mugs and pitchers, *id.* at 1429.

Because heading 9505 covers a far broader range of items than heading 7117, the latter is more specific than the former. It is also more specific because it describes the item by name ("imitation jewelry") rather than by class ("festive articles"). It therefore follows that the imported merchandise is classifiable under heading 7117 rather than under heading 9505. This con-

clusion is in accord with that of Customs in its rulings that if Russ Berrie's imports were covered by both headings, they would be classified under heading 7117 because "the term 'imitation jewelry' more clearly identifies the article than the term 'festive article' as the description 'imitation jewelry' is by name while the description 'festive article' is by class."

C. In view of our conclusion that under the headings and the Rules the articles should be classified under heading 7117, we need not consider the government's argument that the Court of International Trade erred in refusing to give any deference to Customs' classification rulings pursuant to *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001) and *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

## CONCLUSION

The judgment of the Court of International Trade is reversed, and the case is remanded to that court with instructions to uphold Customs' classification of the imported merchandise under heading 7117.

*REVERSED AND REMANDED*